UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Chase Weiss,

Plaintiff,

v.

Bowling Green State University, et al.,

Defendants.

Case No. 3:22-cv-140

MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION & BACKGROUND

On September 30, 2022, I issued a Memorandum Opinion and Order granting in part and denying in part Defendants' motion to dismiss all of Plaintiff Chase Weiss's claims. (Doc. No. 24). Relevant here, I granted Defendants' motion to dismiss all of Plaintiff's claims for injunctive relief against the individual Defendants in their official capacities because I concluded Weiss sought only retrospective injunctive relief that did not fall within the *Ex Parte Young* exception to the Eleventh Amendment's bar against suing the state. (Doc. No. 24 at 10-12).

Recently, in the course of adjudicating several discovery-related motions in this case, I discovered case law which caused me to question the correctness of this conclusion and "[b]ecause my decision on that issue is not yet 'final,' Fed. R. Civ. P. 54(b), I order[ed] the parties to brief the limited issue of whether any form of the relief sought by Weiss from [Defendant Christopher] Bullins in his official capacity for the alleged due process violation [of denying Weiss the opportunity to cross-examine his accuser] is recognized by the Sixth Circuit as 'prospective relief' such that

sovereign immunity does not bar such a claim." (Doc. No. 71 at 11-12). The parties' supplemental briefing is now pending before me. (Doc. Nos. 74, 76, and 77).

At this juncture, I affirm my September 30, 2022 decision to grant Defendants' motion to dismiss all claims against all Defendants other than Bullins. I also affirm my decision to grant Defendants' motion to dismiss all claims against Bullins but one. That one remaining claim is Weiss's procedural due process claim against Bullins for the alleged unconstitutional denial of the right to cross-examine his accuser. I maintain that this single claim against Bullins survives Defendant's Rule 12(b)(6) motion because:

> [Weiss]'s allegations and the language of the Code [Student Code of Conduct], taken together, create an inference that Bullins, as Dean of Students, had the authority to determine that [Weiss]'s case required the ability to cross-examine his accuser or, in the alternative, that Bullins, as Chair of the UCC [University Conduct Committee], rendered the process procedurally unfair by failing to sustain [Weiss]'s objection over his inability to cross-examine his accuser in front of the UCC.

(Doc. No. 24 at 22-23).

Still, I also maintain that partial dismissal of this remaining claim as brought against Bullins in his official capacity as Bowling Green State University Dean of Students is required by law. That is, because sovereign immunity bars Weiss's claim for a declaratory judgment and monetary damages from Bullins *in his official capacity*, Defendants' motion to dismiss Weiss's claim to such relief must be granted. (*See id.* at 10). But I now reconsider *de novo* whether sovereign immunity also bars Weiss's claim against Bullins *in his official capacity* for:

> . . . equitable and injunctive relief, prohibiting the continued imposition of, or reporting of, any disciplinary actions against the Plaintiff to any 3rd party (other academic institutions), name-clearing, injunctive relief needed to reestablish Plaintiff's position and standing at BGSU as it was prior to his suspension, and reinstatement and/or permission to enroll for admission at BGSU in the next fall calendar year.

(Doc. No. 15 at 39-40; Doc. No. 26 at 39-40).[1] Weiss sought this relief in the wake of the post-hearing determination that:

> he was responsible for all charges brought against him and sanctioned as follows: (i.) a suspension for eight years; (ii) a permanent notation of suspension added to his academic transcript; (iii) an official HOLD placed on his registration file to prevent registering for classes; and, (iv) a prohibition from entering the BGSU campus or any University owned or operated facilities.

(Doc. No. 15 at 27; Doc. No. 26 at 27-28).

## II. STANDARD

Rule 12 provides for the dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). And the moving party "bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim." *Pinnacle Bank as Trustee of Ransom Fam. Tr. v. Fid. & Deposit Co. of Md.*, 598 F. Supp. 3d 666, 670-71 (M.D. Tenn. 2022).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state sufficient facts which, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[E]ven though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

---

[1] Through my September 30, 2022 Memorandum Opinion and Order, I denied Weiss's motion to proceed pseudonymously, and ordered him to refile his First Amended Complaint "identifying himself by his legal name within 30 days." (Doc. No. 24 at 28). As such, the May 9, 2022 pre-dismissal-opinion First Amended Complaint is substantially identical to the October 31, 2022 post-dismissal-opinion First Amended Complaint. (*Compare* Doc. No. 15 *with* Doc. No. 26). Put simply, there are no differences between the two First Amended Complaints that are material to the analysis here, but I cite them both throughout for purposes of clarity and consistency.

(2007)) (internal citations and quotation marks omitted)). Importantly, the plaintiff must offer more than conclusory allegations or legal conclusions masquerading as factual allegations. *Twombly*, 550 U.S. at 555 (The complaint must contain something more than "a formulaic recitation of the elements of a cause of action.").

## III. Discussion

"Sovereign immunity precludes suits against states and their entities or officers for monetary damages or retrospective relief but permits claims for prospective relief when brought against state officers in their official capacities." *Ashford v. Univ. of Mich.*, 89 F.4th 960, 969 (6th Cir. 2024) (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908) and *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)). The *Ex parte Young* exception to sovereign immunity "applies only when the plaintiff sues for prospective injunctive relief to end a continuing violation of federal law," and does not apply when the plaintiff sues "for injunctive relief based entirely upon past acts and not continuing conduct that, if stopped would provide a remedy to the plaintiff." *Morgan v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 63 F.4th 510, 515 (6th Cir. 2023) (cleaned up) (citations omitted).

The fact that the alleged constitutional violation occurred in the past – or is a "past act" – is not dispositive to the *Ex parte Young* inquiry. Instead, the Sixth Circuit has repeatedly found that "remedial measures to combat the effects of past constitutional violations are available as a form of prospective injunctive relief under *Ex parte Young*." *In re Flint Water Cases*, 960 F.3d 303, 334 n.10 (6th Cir. 2020). *See, e.g., Josephson v. Ganzel*, 115 F.4th 771, 782-83 (6th Cir. 2024) (holding reinstatement and expungement of negative notations from the plaintiff's personnel file were available as prospective relief for the state actor's alleged past act of First Amendment retaliation); *Ashford*, 89 F.4th at 969-70 (same as to expungement); *Morgan*, 63 F.4th at 515-17 ("[E]xpungement of negative government records pertaining to an aggrieved individual may qualify as prospective relief to remedy a constitutional violation."); *Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir. 2016)

(holding that injunctive relief requiring the individual defendants "to remove the negative notation from appellants' disciplinary records that resulted from the allegedly unconstitutional disciplinary process . . . [was] nothing more than prospective remedial action"); *Carten v. Kent State Univ.*, 282 F.3d 391, 396 (6th Cir. 2002) ("[C]laims for reinstatement are prospective in nature and appropriate subjects for *Ex parte Young* actions.").

Like Defendants argued in their original briefing, (Doc. No. 16 at 11-13; Doc. No. 20 at 3), Bullins first suggests in his supplemental brief that *any* relief Weiss might seek through this action must be considered retrospective because "[t]he primary substance of Plaintiff's allegations relate – almost exclusively – to the alleged past denial of his procedural due process rights (right to cross examine his accuser) at his July 2021 student conduct hearing." (Doc. No. 76 at 2). But as discussed above, and as Bullins implicitly acknowledges, this argument is plainly at odds with controlling Sixth Circuit precedent.

Rejecting this broad argument, I turn to Bullins's remaining arguments with respect to the specific types of injunctive relief Weiss seeks from Bullins in his official capacity as Dean of Students.[2] These include:

> . . . equitable and injunctive relief, prohibiting the continued imposition of, or reporting of, any disciplinary actions against the Plaintiff to any 3rd party (other academic institutions), name-clearing, injunctive relief needed to reestablish Plaintiff's position and standing at BGSU as it was prior to his suspension, and reinstatement and/or permission to enroll for admission at BGSU in the next fall calendar year.

(Doc. No. 15 at 39-40; Doc. No. 26 at 39-40). As clarified in his opening brief, Weiss also seeks "the expungement of the unconstitutional disciplinary findings by Bullins and correction of his university academic records." (Doc. No. 74 at 4).

[2] In his supplemental briefing, Bullins alleges Weiss seeks "a judgment ordering the reversal of the University's decision to discipline him." (Doc. No. 76 at 2). This is declaratory relief, not injunctive. To the extent there is any question, sovereign immunity bars Weiss from being granted relief in the form of such a judgment.

Though Weiss did not specifically request expungement in his First Amended Complaint, expungement and a prohibition against future reporting to third parties are two sides of the same coin, as Bullins implicitly acknowledges. (*See* Doc. No. 76 at 3-4). Bullins also does not dispute that Weiss pled facts that, when taken as true, show his academic transcript has "a permanent notation of suspension" that could be expunged or, conversely, reported. (Doc. No. 15 at 27; Doc. No. 26 at 27-28). Finally, Bullins now concedes "[t]he caselaw seems to suggest" that expungement and, in turn, a prohibition on future reporting are forms of "prospective [relief]. . . and qualifies under an *Ex Parte Young* exception." (Doc. No. 76 at 4) (*See also id.* at 3) (quoting *Morgan*, 63 F.4th at 516 (""[E]xpungement of negative government records pertaining to an aggrieved individual may qualify as prospective relief to remedy a constitutional violation."")); (Doc. No. 76 at 4) (quoting *Doe*, 662 F. App'x at 444 ("If Plaintiff's claim is ultimately successful, . . . 'the individual defendants would merely be compelled to remove the negative notation from appellants' disciplinary records that resulted from the allegedly unconstitutional disciplinary process. This is nothing more than prospective remedial action.'") (citation omitted)). Accordingly, I conclude there is no meaningful dispute on this point. Weiss's claim for these two forms of relief (expungement and a prohibition on future reporting) against Bullins in his official capacity as Dean of Students is not subject to dismissal.

Relatedly, Bullins has stated no meaningful challenge to Weiss's claim for reinstatement or permission to reenroll, presumably acknowledging that the Sixth Circuit has previously rejected such arguments and "held that claims for reinstatement are prospective in nature and appropriate subjects for *Ex parte Young* actions." *Carten*, 282 F.3d at 396 (quoted by *Josephson*, 115 F.4th at 782). Bullins also does not challenge the factual basis upon which Weiss's claim for this relief is based. That is, Weiss has pled facts that, when taken as true, show his 8-year suspension continues to run and the

official hold on his registration file remains.[3] (*See* Doc. No. 15 at 27; Doc. No. 26 at 27-28). Therefore, in accordance with this Circuit's binding precedent, I conclude Weiss's claim for reinstatement or permission to re-enroll is not subject to dismissal.

Remaining are Weiss's claims for "name-clearing [and] injunctive relief needed to reestablish Plaintiff's position and standing at BGSU as it was prior to his suspension." (*See* Doc. No. 15 at 39-40; Doc. No. 26 at 40). Bullins maintains these forms of relief are "***not*** prospective." (Doc. No. 76 at 2) (emphasis in original). I agree.

It is not clear what Weiss seeks in requesting "name-clearing." In his supplemental brief, he relies on *Gunasekera v. Irwin*, 551 F.3d 461, 469-70 (6th Cir. 2009), to show whatever relief he seeks is recognized by this Circuit. (Doc. No. 74 at 2-3). But *Gunasekera* dealt with relief in the form of a name-clearing *hearing*, not name-clearing on its own. 551 F.3d at 469-70. And as discussed in *Gunasekera*, there are elements that must be proven to state a claim for a name-clearing hearing. *See id.* (citing *Quinn v. Shirey*, 293 F.3d 315, 320, 322 (6th Cir. 2002)).

Because Weiss does not purport to seek a "name-clearing hearing" explicitly or implicitly by setting forth facts to state a plausible claim for this relief under the law of this Circuit, I will not read such a claim into his First Amended Complaint. As such, I am left to conclude the "name-clearing" relief he seeks would come in the form of a declaration or something similar by Bullins, in his official capacity, publicly reversing the prior disciplinary finding. To the extent such relief may be considered injunctive in nature rather than declaratory, it would be retrospective in nature. That is, both this sort of "name-clearing" and Weiss's request for "injunctive relief needed to reestablish [his] position and standing at BGSU as it was prior to his suspension" both ask that Bullins, in his

[3] Weiss does not seek specific relief in relation to the "prohibition from entering the BGSU campus or any University owned or operated facilities." (Doc. No. 15 at 27; Doc. No. 26 at 28). Therefore, I do not address it here. But presumably, if he were granted relief in the form of reinstatement or permission to reenroll, this prohibition would be lifted, as well.

official capacity, "undo something that had already been completed." *Lipian v. Univ. of Mich.*, 453 F. Supp. 3d 937, 955 (E.D. Mich. 2020). Accordingly, neither fall within the narrow *Ex Parte Young* exception, and Weiss's claims for both these two forms of relief must be dismissed.

In sum, I conclude Weiss's claim against Bullins in his official capacity survives Defendants' motion to dismiss in part. Specifically, if successful on this claim, Weiss may be granted relief in the forms of: (1) expungement of the negative notations and prohibition on reporting those negative disciplinary actions to third-parties; and (2) reinstatement or permission to reenroll. To the extent Weiss seeks any other relief for this claim against Bullins in his official capacity, the claim remains dismissed.

Finally, because Bullins no longer holds the job of Dean of Students, this official capacity claim for this relief must now proceed against Bullins's replacement – Dr. Jeremy Zilmer – instead of Bullins himself. (*See* Doc. No. 74 at 2; Doc. No. 76 at 4-5). *See also, e.g., Ashford*, 89 F.4th at 970 ("[W]ith respect to a claim against an officer in their official capacity, the suit may proceed against whoever has replaced Evans in his role as Vice Chancellor."). Accordingly, I now order Zilmer be substituted for Bullins as the Defendant to Weiss's official capacity claim against the Dean of Students for Bullins's alleged constitutional violation of denying Weiss the opportunity to cross-examine his accuser during the July 2021 hearing. *See* Fed. R. Civ. P. 25(d).

To be clear, substituting Zilmer as the proper party to this official capacity procedural due process claim has no effect on the underlying claim itself. Put simply, this claim will still rise and fall on whether ***Bullins*** violated Weiss's procedural due process rights by denying Weiss the opportunity to cross-examine his accuser during the July 2021 hearing. No claim against Zilmer for Zilmer's own conduct survives Defendants' motion to dismiss. (*See* Doc. No. 24 at 14-22).

## IV. Conclusion

I maintain that Weiss's procedural due process claim, alleging Bullins violated Weiss's procedural due process rights by denying Weiss the opportunity to cross-examine his accuser during the July 2021 hearing, is the only claim that survives Defendants' motion to dismiss. But for the foregoing reasons, I conclude Weiss can bring this claim against not just Bullins, in his individual capacity, but also Dr. Jeremy Zilmer, in his official capacity as Dean of Students, for injunctive relief in the forms of **only**: (1) expungement of the negative notations and prohibition on reporting those negative disciplinary actions to third-parties; and (2) reinstatement or permission to reenroll. The official capacity claim is dismissed as to all other forms of relief Weiss sought. Further, all other claims against all other Defendants remain dismissed.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge